# UNITED STATES DISTRICT COURT
## DISTRICT COURT OF MASSACHUSETTS

**CIVIL DOCKET NO.**

|  |  |
|---|---|
| PAUL BOWES, DANIEL M. CROWTHER, BRUCE EDEN, DOUGLAS HELPPI, JOHN SCOTT PETHICK, DAVID R. POLLARD, EARL HENRY SHOLLEY, MATTHEW SCHUZER, JOHN TYSON, ERNEST VALDEZ, PAUL VITALE, ANCPR, INC. and A MATTER OF JUSTICE, INC, <br>      Plaintiffs <br><br> vs. <br><br> JANET RENO, in her official capacity as Attorney General of the United States, and DONNA SHALALA, in her official capacity as Secretary of Health and Human Services, and DAVID GRAY ROSS, in his official capacity as Commissioner of the Office of Child Support Enforcement, and MADELEINE K. ALBRIGHT, in her official capacity as Secretary of State of the United States of America, <br>      Defendants | **COMPLAINT FOR DECLARATORY RELIEF AND INJUNCTIVE RELIEF** <br><br> **00-12557NG** |

RECEIPT # __27470__
AMOUNT $ __150.00__
SUMMONS ISS. __YES__
LOCAL RULE 4.1 _____
WAIVER OF SERV. _____
MCF ISSUED _____
AO 120 OR 121 _____
BY DPTY CLK __S. Selby__
DATE __12/14/00__

## BACKGROUND SUMMARY

1. This action is brought for the purpose of seeking to declare unconstitutional and enjoin enforcement of Title 42 U.S. Code Section 666(a) 9(c), commonly known as the "Bradley Amendment" ("the Amendment"), as well as 22 CFR 51.70(a)(8) and Title 42 U.S. Code 652(k), the regulatory statutes for passport revocation due to child support arrearages.  (Exhibits A, B & C)

2.      Plaintiffs include individuals faced with child support arrearage obligations and are unable to retroactively modify their arrearages due to the Amendment, and who also have had their passports revoked or who are ineligible for a passport due to their child support arrearages.

3.      Plaintiffs believe that the Bradley Amendment is violative of the Fifth, Ninth, Tenth and Fourteenth Amendments of the United States Constitution both on its face and as applied and set forth their grievances below.  Plaintiffs believe that the statute and regulations affecting their eligibility for a passport similarly violate their rights to substantive due process guaranteed under the Fifth Amendment and their natural rights to travel under the Ninth Amendment.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction pursuant to 28 U.S.C. Section 1331, 1361 and 2201.  Venue is proper under 28 U.S.C. Section 1391(e).

## PARTIES

5.      Plaintiff Paul Bowes is a natural person with a usual place of residence in Worcester, Massachusetts.  Mr. Bowes is in arrears in child support.

6.      Plaintiff Daniel M. Crowther is a natural person with a usual place of residence in Berwick, Maine.  Mr. Crowther is in arrears in child support.

7.    Plaintiff Bruce Eden is a natural person with a usual place of residence in Wayne, New Jersey. Mr. Eden is in arrears in child support.

8.    Plaintiff John Scott Pethick is a natural person with a usual place of residence in LaPlume, Pennsylvania. Mr. Pethick is in arrears in child support.

9.    Plaintiff Douglas Helppi is a natural person with a usual place of residence in Felton, California. Mr. Helppi is in arrears in child support.

10.    Plaintiff David M. Pollard is a natural person with a usual place of residence in Las Vegas, Nevada. Mr. Pollard is in arrears in child support.

11.    Plaintiff Earl Sholley is a natural person with a usual place of residence in North Attleboro, Massachusetts. Mr. Sholley owes arrearages in child support.

12.    Plaintiff Matthew Schuzer is a natural person with a usual place of residence in Lexington, Kentucky. Mr. Schuzer is in arrears in child support.

13.    Plaintiff John Tyson is a natural person with a usual place of residence in Burbank, California. Mr. Tyson is in arrears in child support. Mr. Tyson has been unable to obtain certain jobs due to the revocation of his drivers license and inability to obtain a passport.

14.        Plaintiff Ernest Valdez is a natural person with a usual place of residence in Santa

Ana, California.  Mr. Valdez is in arrears in child support.

15.        Plaintiff Paul Vitale is a natural person with a usual place of residence in Lancaster,

California.  Mr. Vitale is in arrears in child support.

16.        Plaintiff ANCPR, Inc., is a California non-profit corporation with a usual place of

business in Beverly Hills, California.  It is an organization which advocates the repeal

of the Bradley Amendment and whose membership consists of non-custodial parents,

who are affected by the Bradley Amendment.

17.        Plaintiff, A Matter of Justice, Inc. is a non-profit corporation with a usual place of

business in Dahlgren, Virginia.  Its membership includes a number of non-custodial

parents burdened by child support arrearages.

18.        Defendant Attorney General Janet Reno heads the United States Department of

Justice which is the agency of the United States Government responsible for the

enforcement of federal statutes including the statute at issue in this case.

19.        Defendant Donna Shalala is the Secretary of Health and Human Services which

oversees the formulation of child support enforcement policy which is at issue in this

case.

20.     Defendant David Gray Ross is the Commissioner of the Office of Child Support Enforcement which issues federal directives to state agencies concerning the collection of arrears accruing under the Bradley Amendment.

21.     Defendant Madeline K. Albright is Secretary of State of the United States who issues and revokes passports.


## FACTUAL ALLEGATIONS

### ENACTMENT OF THE BRADLEY AMENDMENT

22.     In 1986, Congress adopted and the President signed the Bradley Amendment.  In relevant part, the Amendment requires state courts to prohibit retroactive reduction of child support obligations.

23.     In essence, the Amendment provides that child support arrearages may not be retroactively lowered prior to filing of a motion or complaint for modification by an "obligor."  The arrearages allegedly owed prior to the filing of a complaint or motion for modification cannot, because of the Bradley Amendment, be lowered.

24.     The Plaintiffs have suffered great hardship as a result of the enactment and implementation of the Amendment.

25.     As a direct and proximate result of the Amendment, certain of the Plaintiffs and

persons similarly situated have:

a)     been deprived of driver's licenses.
b)     been prosecuted and imprisoned.
c)     had their passports revoked.
d)     been forced to live at below poverty level.

26.     As a direct and proximate result of the Amendment, certain of the Plaintiffs and

similarly situated persons have literally had their lives severely damaged in that they

have had difficulties in holding a job, maintaining a bank account or having any kind

of meaningful access to the economy.

27.     In its effect, the Amendment often operates to prevent non-custodial parents from

ever reaching a point in which they can satisfy the obligations imposed on them by the

state court in which they have been made an obligor.

28.     In its effect, the Amendment prohibits obligors from retroactively reducing their

arrearages prior to the date of filing an action for modification.

29.     As a consequence, persons unable for a variety of reasons, (including, but not

limited to financial hardship, illness, imprisonment, disability, geographic distance,

inability to represent oneself pro-se or afford counsel) to file a motion or complaint to

modify their support obligation have a permanent obligation that cannot be discharged

in bankruptcy, and often forces poor individuals into illegal activities or the

underground economy.

30.   A number of individuals have been forced to leave the United States as a direct result of the Amendment.

31.   The Amendment disproportionately impacts males as, on information and belief, over ninety percent of custody awards in state domestic relations cases are given to females.

32.   In the implementation of Child Support Enforcement obligations precipitated by operation of the Act, the Defendant Albright, in her capacity as Secretary of State, pursuant to 22 CFR 51.70(a)(8) et seq, and 42 U.S.C. § 652(k) suspends the passport and right to foreign travel of non-custodial parents, in violation of their natural rights pursuant to the Ninth Amendment and in violation of their right to substantive due process in accord with the Fifth and Fourteenth Amendment.

33.   Similarly, occupational licenses, drivers licenses, and food stamps are suspended as a means of implementing the child support collection and enforcement scheme precipitated by operation of the Amendment.

## SPECIFIC HARM FACED BY PLAINTIFFS

34.   Plaintiffs named herein all face specific harm as a direct and proximate result of the Bradley Amendment.

35.     Plaintiff John Tyson was found by a Michigan court to owe a child support obligation based on imputed income.  The income imposed to him was determined arbitrarily and capriciously and had no relationship to his actual income.

36.     Because of the Bradley Amendment, the arrearage owed by Plaintiff John Tyson not only accrued, but remains permanently affixed by the State of Michigan court system as he cannot seek a retroactive downward modification.  Mr. Tyson has also become ineligible for a passport and can not obtain a California driver's license.

37.     Plaintiff Douglas Helppi was medically disabled from 1993 to 1999.  Despite his disability, income was "imputed to him" of $52,000.00 yearly.  He had no current income at the time the court decision was made.

38.     Due to the Bradley Amendment, Plaintiff Douglas Helppi cannot retroactively modify the obligations assessed to him.  His driver's license has been suspended twice, his credit has been damaged, he has repeatedly been subject to arrest, contempt, and garnishment of income and tax returns.  He has also been notified that his passport may be suspended.

39.     Plaintiff Matthew W. Schuzer has been unable to meet his obligations imposed upon him by the Iowa Support Recovery Unit.  As a consequence of this, his bank accounts have been seized and he is unable to have a bank account any longer.

40.     Due to the Bradley Amendment, Plaintiff Matthew W. Schuzer cannot retroactively modify his support obligation.

41.     Plaintiff Paul Vitale became in arrears with the Department of Child Support of Los Angeles County.  His wages were garnished three times and, as a result, he became unemployed.  Subsequently, his unemployment checks were also revoked.

42.     Plaintiff Vitale's driver's license was also revoked.

43.     As a union electrician, Plaintiff Vitale was subject at times to work fluctuations.  He was unable to modify his arrearages due to the Bradley Amendment, and is ineligible for a passport under the statutes and regulation in question.

44.     Plaintiff Ernest Valdez has been unable to modify his child support retroactively. During periods of unemployment, he was unable to afford an attorney and child support obligations accumulated which cannot be reduced due the Bradley Amendment.

45.     Plaintiff Valdez has been threatened with loss of his passport.

46.     Plaintiff David Pollard was unable to keep up with his child support payments and lost his driver's instruction permit.  Consequently he lost his job.  The revocation of his permit was due to his failure to maintain child support payments.

47.     Plaintiff Pollard's driver's license was revoked in Nevada and California.

48.     As a consequence of his job loss, Plaintiff Pollard suffered psychological depression and a suicide attempt for which he was hospitalized.   He nevertheless was unable to modify his child support.

49.     Plaintiff Bruce Eden has had, due to child support arrearages, his social security disability check garnished.  He has disputes as to the assessment of child support arrearages and cannot modify his arrearage due to the Bradley Amendment.

50.     Plaintiff Eden has also had his driver's license suspended despite his need for medical treatment.

51.     Plaintiffs Earl Henry Sholley, Paul Bowes, John Scott Pethick and Daniel M. Crowther also have been placed in serious financial strain by the assessment of child support arrearages.   They have good cause to seek a downward retroactive modification of their arrearages but cannot do so because of the Bradley Amendment.

52.     Plaintiff Earl Sholley was, in fact incarcerated for several months in 1995.  His child support obligations continued to accrue while he was imprisoned.

53.     Plaintiff Sholley's arrearages cannot be retroactively lowered due to the Bradley Amendment.

54.     All of the Plaintiffs are ineligible for a United States passport due to their child support arrearage.

## FIRST COUNT

### VIOLATIONS OF SUBSTANTIVE DUE PROCESS

55.     Each and every allegation stated above is realleged and is incorporated herein by reference.

56.     The Bradley Amendment, both on its face and in it application, is so unfair as to shock the conscience of reasonable people in a civilized community.

57.     Therefore the Bradley Amendment denies the rights of the Plaintiffs and similarly situated persons to substantive due process in violation of the Fifth and Fourteenth Amendments to the United States Constitution.

## SECOND COUNT

### VIOLATIONS OF STATE SOVEREIGNTY
### GUARANTEED BY THE TENTH AMENDMENT

58.     Each and every allegation stated above is realleged and is incorporated herein by reference.

59.     The Bradley Amendment, both on its face and in its applications violates the rights of state citizens in state courts to judicial independence and to the sovereignty each state is entitled by the Tenth Amendment of the United States Constitution. The federal government, through the Bradley Amendment is acting beyond its constitutional authority in restricting the power of state court judges.

## THIRD COUNT

### DEPRIVATION OF EQUAL PROTECTION OF LAW

60.     Each and every allegation stated above is realleged and is incorporated herein by reference.

61.     The Amendment in its application has a vastly disproportionate impact on persons of the male gender.

62.     Because over ninety percent (90%) of custody awards are to females, males are overwhelmingly the non-custodial parents, who suffer damage as a result of the harsh and arbitrary enforcement of the Bradley Amendment, in violation of the due process and equal protection rights of the Plaintiffs and similarly situated persons, guaranteed by the Fifth and Fourteenth Amendments to the federal constitution.

## FOURTH COUNT

**VIOLATION OF NATURAL RIGHTS
PURSUANT TO THE NINTH AMENDMENT**

63.     Each and every allegation stated above is realleged and is incorporated herein by reference.

64.     As applied, the Bradley Amendment and the passport restriction statutes cited above violates the natural rights of the Plaintiffs and similarly situated persons by:

a)     Restricting their right to travel by revoking and/or suspending their drivers licenses and passports

b)     Revoking their eligibility for food stamps.

c)     Depriving them of their right to a livelihood by suspending occupational licenses.

65.     Additionally, the Bradley Amendment often imposes a financial obligation on a parent when no parent-child relationship exists, and often years after the father even knows he has a child.

66.     The father is then adjudicated in arrears many tens of thousands of dollars, is subject to draconian collection enforcement and becomes unable to participate in the economy, with his right to have a job, own a business or establish a bank account, have a drivers license or travel abroad, all nullified by the Bradley Amendment.

67.    Plaintiffs and persons similarly situated to the plaintiffs literally have their lives destroyed and are denied basic human rights.

68.    Plaintiffs have all been damaged or in danger of suffering some or all of the damages enumerated above.

Wherefore, Plaintiffs pray this Court:

I.    Issue declaratory relief to the effect that the Bradley Amendment (Title 42 U.S. Code § 666 (a)(9)(c) is unconstitutional and that 22 CFR 51.70 (a)(8) and Title 42 USC § 652(k) are unconstitutional.

II.    Issue injunctive relief and such other relief as is deemed appropriate and just.

III.    Enjoin the Defendant Madeline Albright from denying or suspending any further passports of persons in arrears on child support

IV.    Enjoin defendants Janet Reno, Donna Shalala and David Gray Ross from enforcing the Bradley Amendment.

V.    Award attorneys fees and costs to the Plaintiffs.

For the Plaintiffs
By their attorney,

David C. Grossack Esquire
Post Office Box 90
Hull, Massachusetts   02045
(781) 925-5253
BBO # 212890
December 14, 2000

# EXHIBIT A

Search USC, About Database, Download USC, Classification Tables, Codification



Go to 1st query term(s)

-CITE-

**42 *USC* Sec. *666***                                    01/05/99

-EXPCITE-

TITLE 42 - THE PUBLIC HEALTH AND WELFARE

CHAPTER 7 - SOCIAL SECURITY

SUBCHAPTER IV - GRANTS TO **STATES** FOR AID AND SERVICES TO NEEDY

FAMILIES WITH CHILDREN AND FOR CHILD-WELFARE SERVICES

Part D - Child ***Support*** and Establishment of Paternity

-HEAD-

Sec. 666. Requirement of statutorily prescribed procedures to

improve effectiveness of child ***support*** enforcement

-STATUTE-

(a) Types of procedures required

In order to satisfy section 654(20)(A) of this title, each **State**

must have in effect laws requiring the use of the following

procedures, consistent with this section and with regulations of

the Secretary, to increase the effectiveness of the program which

the **State** administers under this part:

(1)(A) Procedures described in subsection (b) of this section

for the withholding from income of amounts payable as ***support*** in

cases subject to enforcement under the **State** plan.

(B) Procedures under which the income of a person with a

***support*** obligation imposed by a ***support*** order issued (or

modified) in the **State** before January 1, 1994, if not otherwise

subject to withholding under subsection (b) of this section,

shall become subject to withholding as provided in subsection (b)

of this section if arrearages occur, without the need for a

judicial or administrative hearing.

(2) Expedited administrative and judicial procedures (including the procedures specified in subsection (c) of this section) for establishing paternity and for establishing, modifying, and enforcing **support** obligations. The Secretary may waive the provisions of this paragraph with respect to one or more political subdivisions within the **State** on the basis of the effectiveness and timeliness of **support** order issuance and enforcement or paternity establishment within the political subdivision (in accordance with the general rule for exemptions under subsection (d) of this section).

(3) Procedures under which the **State** child **support** enforcement agency shall request, and the **State** shall provide, that for the purpose of enforcing a **support** order under any **State** plan approved under this part -

(A) any refund of **State** income tax which would otherwise be payable to a noncustodial parent will be reduced, after notice has been sent to that noncustodial parent of the proposed reduction and the procedures to be followed to contest it (and after full compliance with all procedural due process requirements of the **State**), by the amount of any overdue **support** owed by such noncustodial parent;

(B) the amount by which such refund is reduced shall be distributed in accordance with section 657 of this title in the case of overdue **support** assigned to a **State** pursuant to section 608(a)(3) or 671(a)(17) of this title, or, in any other case, shall be distributed, after deduction of any fees imposed by the **State** to cover the costs of collection, to the child or parent to whom such **support** is owed; and

(C) notice of the noncustodial parent's social security account number (or numbers, if he has more than one such number) and home address shall be furnished to the **State** agency

submit to genetic tests upon the request of any such party, if the request is **supported** by a sworn statement by the party —

    (I) alleging paternity, and setting forth facts establishing a reasonable possibility of the requisite sexual contact between the parties; or

    (II) denying paternity, and setting forth facts establishing a reasonable possibility of the nonexistence of sexual contact between the parties.

(ii) Other requirements. - Procedures which require the **State** agency, in any case in which the agency orders genetic testing —

    (I) to pay costs of such tests, subject to recoupment (if the **State** so elects) from the alleged father if paternity is established; and

    (II) to obtain additional testing in any case if an original test result is contested, upon request and advance payment by the contestant.

(C) Voluntary paternity acknowledgment. -

(i) Simple civil process. - Procedures for a simple civil process for voluntarily acknowledging paternity under which the **State** must provide that, before a mother and a putative father can sign an acknowledgment of paternity, the mother and the putative father must be given notice, orally, or through the use of video or audio equipment, and in writing, of the alternatives to, the legal consequences of, and the rights (including, if 1 parent is a minor, any rights afforded due to minority status) and responsibilities that arise from, signing the acknowledgment.

(ii) Hospital-based program. - Such procedures must include a hospital-based program for the voluntary acknowledgment of paternity focusing on the period immediately before or after

requesting the refund offset, and to the *State* agency enforcing the order.

(4) Liens. – Procedures under which –

(A) liens arise by operation of law against real and personal property for amounts of overdue *support* owed by a noncustodial parent who resides or owns property in the *State*; and

(B) the *State* accords full faith and credit to liens described in subparagraph (A) arising in another *State*, when the *State* agency, party, or other entity seeking to enforce such a lien complies with the procedural rules relating to recording or serving liens that arise within the *State*, except that such rules may not require judicial notice or hearing prior to the enforcement of such a lien.

(5) Procedures concerning paternity establishment. –

(A) Establishment process available from birth until age 18.

(i) Procedures which permit the establishment of the paternity of a child at any time before the child attains 18 years of age.

(ii) As of August 16, 1984, clause (i) shall also apply to a child for whom paternity has not been established or for whom a paternity action was brought but dismissed because a statute of limitations of less than 18 years was then in effect in the *State*.

(B) Procedures concerning genetic testing. –

(i) Genetic testing required in certain contested cases. – Procedures under which the *State* is required, in a contested paternity case (unless otherwise barred by *State* law) to require the child and all other parties (other than individuals found under section 654(29) of this title to have good cause and other exceptions for refusing to cooperate) to

the birth of a child.

(iii) Paternity establishment services. -

(I) **State**-offered services. - Such procedures must require the **State** agency responsible for maintaining birth records to offer voluntary paternity establishment services.

(II) Regulations. -

(aa) Services offered by hospitals and birth record agencies. - The Secretary shall prescribe regulations governing voluntary paternity establishment services offered by hospitals and birth record agencies.

(bb) Services offered by other entities. - The Secretary shall prescribe regulations specifying the types of other entities that may offer voluntary paternity establishment services, and governing the provision of such services, which shall include a requirement that such an entity must use the same notice provisions used by, use the same materials used by, provide the personnel providing such services with the same training provided by, and evaluate the provision of such services in the same manner as the provision of such services is evaluated by, voluntary paternity establishment programs of hospitals and birth record agencies.

(iv) Use of paternity acknowledgment affidavit. - Such procedures must require the **State** to develop and use an affidavit for the voluntary acknowledgment of paternity which includes the minimum requirements of the affidavit specified by the Secretary under section 652(a)(7) of this title for the voluntary acknowledgment of paternity, and to give full faith and credit to such an affidavit signed in any other

**State** according to its procedures.

(D) Status of signed paternity acknowledgment. –

(i) Inclusion in birth records. – Procedures under which the name of the father shall be included on the record of birth of the child of unmarried parents only if –

(I) the father and mother have signed a voluntary acknowledgment of paternity; or

(II) a court or an administrative agency of competent jurisdiction has issued an adjudication of paternity.

Nothing in this clause shall preclude a **State** agency from obtaining an admission of paternity from the father for submission in a judicial or administrative proceeding, or prohibit the issuance of an order in a judicial or administrative proceeding which bases a legal finding of paternity on an admission of paternity by the father and any other additional showing required by **State** law.

(ii) Legal finding of paternity. – Procedures under which a signed voluntary acknowledgment of paternity is considered a legal finding of paternity, subject to the right of any signatory to rescind the acknowledgment within the earlier of –

(I) 60 days; or

(II) the date of an administrative or judicial proceeding relating to the child (including a proceeding to establish a **support** order) in which the signatory is a party.

(iii) Contest. – Procedures under which, after the 60-day period referred to in clause (ii), a signed voluntary acknowledgment of paternity may be challenged in court only on the basis of fraud, duress, or material mistake of fact, with the burden of proof upon the challenger, and under which the legal responsibilities (including child **support** obligations) of any signatory arising from the acknowledgment

may not be suspended during the challenge, except for good
cause shown.

(E) Bar on acknowledgment ratification proceedings. -
Procedures under which judicial or administrative proceedings
are not required or permitted to ratify an unchallenged
acknowledgment of paternity.

(F) Admissibility of genetic testing results. - Procedures -

(i) requiring the admission into evidence, for purposes of
establishing paternity, of the results of any genetic test
that is -

(I) of a type generally acknowledged as reliable by
accreditation bodies designated by the Secretary; and

(II) performed by a laboratory approved by such an
accreditation body;

(ii) requiring an objection to genetic testing results to
be made in writing not later than a specified number of days
before any hearing at which the results may be introduced
into evidence (or, at *State* option, not later than a
specified number of days after receipt of the results); and

(iii) making the test results admissible as evidence of
paternity without the need for foundation testimony or other
proof of authenticity or accuracy, unless objection is made.

(G) Presumption of paternity in certain cases. - Procedures
which create a rebuttable or, at the option of the *State*,
conclusive presumption of paternity upon genetic testing
results indicating a threshold probability that the alleged
father is the father of the child.

(H) Default orders. - Procedures requiring a default order to
be entered in a paternity case upon a showing of service of
process on the defendant and any additional showing required by
*State* law.

(I) No right to jury trial. - Procedures providing that the parties to an action to establish paternity are not entitled to a trial by jury.

(J) Temporary **support** order based on probable paternity in contested cases. - Procedures which require that a temporary order be issued, upon motion by a party, requiring the provision of child **support** pending an administrative or judicial determination of parentage, if there is clear and convincing evidence of paternity (on the basis of genetic tests or other evidence).

(K) Proof of certain **support** and paternity establishment costs. - Procedures under which bills for pregnancy, childbirth, and genetic testing are admissible as evidence without requiring third-party foundation testimony, and shall constitute prima facie evidence of amounts incurred for such services or for testing on behalf of the child.

(L) Standing of putative fathers. - Procedures ensuring that the putative father has a reasonable opportunity to initiate a paternity action.

(M) Filing of acknowledgments and adjudications in **state** registry of birth records. - Procedures under which voluntary acknowledgments and adjudications of paternity by judicial or administrative processes are filed with the **State** registry of birth records for comparison with information in the **State** case registry.

(6) Procedures which require that a noncustodial parent give security, post a bond, or give some other guarantee to secure payment of overdue **support**, after notice has been sent to such noncustodial parent of the proposed action and of the procedures to be followed to contest it (and after full compliance with all procedural due process requirements of the **State**).

(7) Reporting arrearages to credit bureaus. -

(A) In general. - Procedures (subject to safeguards pursuant to subparagraph (B)) requiring the **State** to report periodically to consumer reporting agencies (as defined in section 1681a(f) of title 15 (FOOTNOTE 1) the name of any noncustodial parent who is delinquent in the payment of **support**, and the amount of overdue **support** owed by such parent.

(FOOTNOTE 1) So in original.  Probably should be followed by a closing parenthesis.

(B) Safeguards. - Procedures ensuring that, in carrying out subparagraph (A), information with respect to a noncustodial parent is reported -

(i) only after such parent has been afforded all due process required under **State** law, including notice and a reasonable opportunity to contest the accuracy of such information; and

(ii) only to an entity that has furnished evidence satisfactory to the **State** that the entity is a consumer reporting agency (as so defined).

(8)(A) Procedures under which all child **support** orders not described in subparagraph (B) will include provision for withholding from income, in order to assure that withholding as a means of collecting child **support** is available if arrearages occur without the necessity of filing application for services under this part.

(B) Procedures under which all child **support** orders which are initially issued in the **State** on or after January 1, 1994, and are not being enforced under this part will include the following requirements:

(i) The income of a noncustodial parent shall be subject to withholding, regardless of whether **support** payments by such parent are in arrears, on the effective date of the order;

except that such income shall not be subject to withholding
under this clause in any case where (I) one of the parties
demonstrates, and the court (or administrative process) finds,
that there is good cause not to require immediate income
withholding, or (II) a written agreement is reached between
both parties which provides for an alternative arrangement.

(ii) The requirements of subsection (b)(1) of this section
(which shall apply in the case of each noncustodial parent
against whom a *support* order is or has been issued or modified
in the *State*, without regard to whether the order is being
enforced under the *State* plan).

(iii) The requirements of paragraphs (2), (5), (6), (7), (8),
(9), and (10) of subsection (b) of this section, where
applicable.

(iv) Withholding from income of amounts payable as *support*
must be carried out in full compliance with all procedural due
process requirements of the *State*.

(9) Procedures which require that any payment or installment of
*support* under any child *support* order, whether ordered through
the *State* judicial system or through the expedited processes
required by paragraph (2), is (on and after the date it is due) -

(A) a judgment by operation of law, with the full force,
effect, and attributes of a judgment of the *State*, including
the ability to be enforced,

(B) entitled as a judgment to full faith and credit in such
*State* and in any other *State*, and

(C) not subject to retroactive *modification* by such *State* or
by any other *State*;

except that such procedures may permit *modification* with respect
to any period during which there is pending a petition for
*modification*, but only from the date that notice of such petition

has been given, either directly or through the appropriate agent, to the obligee or (where the obligee is the petitioner) to the obligor.

(10) Review and adjustment of *support* orders upon request. –

(A) 3-year cycle. –

(i) In general. – Procedures under which every 3 years (or such shorter cycle as the *State* may determine), upon the request of either parent, or, if there is an assignment under part A of this subchapter, upon the request of the *State* agency under the *State* plan or of either parent, the *State* shall with respect to a *support* order being enforced under this part, taking into account the best interests of the child involved –

(I) review and, if appropriate, adjust the order in accordance with the guidelines established pursuant to section 667(a) of this title if the amount of the child *support* award under the order differs from the amount that would be awarded in accordance with the guidelines;

(II) apply a cost-of-living adjustment to the order in accordance with a formula developed by the *State*; or

(III) use automated methods (including automated comparisons with wage or *State* income tax data) to identify orders eligible for review, conduct the review, identify orders eligible for adjustment, and apply the appropriate adjustment to the orders eligible for adjustment under any threshold that may be established by the *State*.

(ii) Opportunity to request review of adjustment. – If the *State* elects to conduct the review under subclause (II) or (III) of clause (i), procedures which permit either party to contest the adjustment, within 30 days after the date of the notice of the adjustment, by making a request for review and,

if appropriate, adjustment of the order in accordance with
the child *support* guidelines established pursuant to section
667(a) of this title.

    (iii) No proof of change in circumstances necessary in
3-year cycle review. - Procedures which provide that any
adjustment under clause (i) shall be made without a
requirement for proof or showing of a change in
circumstances.

    (B) Proof of substantial change in circumstances necessary in
request for review outside 3-year cycle. - Procedures under
which, in the case of a request for a review, and if
appropriate, an adjustment outside the 3-year cycle (or such
shorter cycle as the *State* may determine) under clause (i), the
*State* shall review and, if the requesting party demonstrates a
substantial change in circumstances, adjust the order in
accordance with the guidelines established pursuant to section
667(a) of this title.

    (C) Notice of right to review. - Procedures which require the
*State* to provide notice not less than once every 3 years to the
parents subject to the order informing the parents of their
right to request the *State* to review and, if appropriate,
adjust the order pursuant to this paragraph.  The notice may be
included in the order.

(11) Procedures under which a *State* must give full faith and
credit to a determination of paternity made by any other *State*,
whether established through voluntary acknowledgment or through
administrative or judicial processes.

    (12) Locator information from interstate networks. - Procedures
to ensure that all Federal and *State* agencies conducting
activities under this part have access to any system used by the
*State* to locate an individual for purposes relating to motor

vehicles or law enforcement.

(13) Recording of social security numbers in certain family matters. – Procedures requiring that the social security number of –

(A) any applicant for a professional license, driver's license, occupational license, recreational license, or marriage license be recorded on the application;

(B) any individual who is subject to a divorce decree, **support** order, or paternity determination or acknowledgment be placed in the records relating to the matter; and

(C) any individual who has died be placed in the records relating to the death and be recorded on the death certificate. For purposes of subparagraph (A), if a **State** allows the use of a number other than the social security number to be used on the face of the document while the social security number is kept on file at the agency, the **State** shall so advise any applicants.

(14) High-volume, automated administrative enforcement in interstate cases. –

(A) In general. – Procedures under which –

(i) the **State** shall use high-volume automated administrative enforcement, to the same extent as used for intrastate cases, in response to a request made by another **State** to enforce **support** orders, and shall promptly report the results of such enforcement procedure to the requesting **State**;

(ii) the **State** may, by electronic or other means, transmit to another **State** a request for assistance in enforcing **support** orders through high-volume, automated administrative enforcement, which request –

(I) shall include such information as will enable the **State** to which the request is transmitted to compare the

# EXHIBIT B

[Code of Federal Regulations]
[Title 22, Volume 1, Parts 1 to 299]
[Revised as of April 1, 2000]
From the U.S. Government Printing Office via GPO Access
[CITE: 22CFR51.70]

[Page 261-262]

                    TITLE 22--FOREIGN RELATIONS

                CHAPTER I--DEPARTMENT OF STATE

PART 51--PASSPORTS--Table of Contents

        Subpart E--Limitation on Issuance or Extension of Passports

Sec. 51.70  Denial of passports.


    (a) A passport, except for direct return to the United States, shall
not be issued in any case in which the Secretary of State determines or
is informed by competent authority that:
    (1) The applicant is the subject of an outstanding Federal warrant
of arrest for a felony, including a warrant issued under the Federal
Fugitive Felon Act (18 U.S.C. 1073); or
    (2) The applicant is subject to a criminal court order, condition of
probation, or condition of parole, any of which forbids departure from
the United States and the violation of which could result in the
issuance of a Federal warrant of arrest, including a warrant issued
under the Federal Fugitive Felon Act; or
    (3) The applicant is subject to a court order committing him or her
to a mental institution; or
    (4) The applicant is the subject of a request for extradition or
provisional arrest for extradition which has been presented to the
government of a foreign country; or
    (5) The applicant is the subject of a subpoena issued pursuant to
section 1783 of title 28, United States Code, in a matter involving
Federal prosecution for, or grand jury investigation of, a felony; or
    (6) The applicant has not repaid a loan received from the United
States as prescribed under Secs. 71.10 and 71.11 of this chapter; or
    (7) The applicant is in default on a loan received from the United
States to effectuate his or her return from a foreign country in the
course of travel abroad; or

[[Page 262]]

    (8) The applicant has been certified by the Secretary of Health and
Human Services as notified by a State agency under 42 U.S.C. 652(k) to
be in arrears of child support in an amount exceeding $5,000.00.
    (b) A passport may be refused in any case in which the Secretary of
State determines or is informed by competent authority that:
    (1) The applicant has not repaid a loan received from the United
States to effectuate his or her return from a foreign country in the
course of travel abroad; or
    (2) The applicant has been legally declared incompetent unless
accompanied on his or her travel abroad by the guardian or other person
responsible for the national's custody and well being; or
    (3) The applicant is under the age of 18 years, unmarried and not in
the military service of the United States unless a person having legal
custody of such national authorizes issuance of the passport and agrees
to reimburse the United States for any monies advanced by the United
States for the minor to return to the United States; or
    (4) The Secretary determines that the national's activities abroad

are causing or are likely to cause serious damage to the national
security or the foreign policy of the United States; or
 (5) The applicant has been the subject of a prior adverse action
under this section or Sec. 51.71 and has not shown that a change in
circumstances since the adverse action warrants issuance of a passport;
or
 (6) The applicant is subject to an order of restraint or
apprehension issued by an appropriate officer of the United States Armed
Forces pursuant to chapter 47 of title 10 of the United States Code.

(Approved by the Office of Management and Budget under control number
1405-0077)

[54 FR 8531, Mar. 1, 1989, as amended at 62 FR 62695, Nov. 25, 1997]

# EXHIBIT C





U.S. Code

legal information institute

- United States Code
  - TITLE 42 - THE PUBLIC HEALTH AND WELFARE
    - CHAPTER 7 - SOCIAL SECURITY
      - SUBCHAPTER IV - GRANTS TO STATES FOR AID AND SERVICES TO NEEDY FAMILIES WITH CHILDREN AND FOR CHILD-WELFARE SERVICES
        - Part D - Child Support and Establishment of Paternity
        - ■

## Sec. 652. Duties of Secretary

- (a) Establishment of separate organizational unit; duties
  The Secretary shall establish, within the Department of Health and Human Services a separate organizational unit, under the direction of a designee of the Secretary, who shall report directly to the Secretary and who shall -
  - (1) establish such standards for State programs for locating noncustodial parents, establishing paternity, and obtaining child support and support for the spouse (or former spouse) with whom the noncustodial parent's child is living as he determines to be necessary to assure that such programs will be effective;
  - (2) establish minimum organizational and staffing requirements for State units engaged in carrying out such programs under plans approved under this part;
  - (3) review and approve State plans for such programs;
  - (4)
    - (A) review data and calculations transmitted by State agencies pursuant to section 654(15)(B) of this title on State program accomplishments with respect to performance indicators for purposes of subsection (g) of this section and section 658 of this title;
    - (B) review annual reports submitted pursuant to section 654(15)(A) of this title and, as appropriate, provide to the State comments, recommendations for additional or alternative corrective actions, and technical assistance; and
      (C) conduct audits, in accordance with the Government auditing standards of the Comptroller General of the United States -
      - (i) at least once every 3 years (or more frequently, in the case of a State which fails to meet the requirements of this part concerning performance standards and reliability of program data) to assess the completeness, reliability, and security of the data and the accuracy of the reporting systems

Case 1:00-cv-12557-NG    Document 1    Filed 12/15/00    Page 34 of 42

used in calculating performance indicators under subsection (g) of this section and section 658 of this title;

- ■ (ii) of the adequacy of financial management of the State program operated under the State plan approved under this part, including assessments of -
- ■ (I) whether Federal and other funds made available to carry out the State program are being appropriately expended, and are properly and fully accounted for; and

(II) whether collections and disbursements of support payments are carried out correctly and are fully accounted for; and

(iii) for such other purposes as the Secretary may find necessary;

- ○ (5) assist States in establishing adequate reporting procedures and maintain records of the operations of programs established pursuant to this part in each State, and establish procedures to be followed by States for collecting and reporting information required to be provided under this part, and establish uniform definitions (including those necessary to enable the measurement of State compliance with the requirements of this part relating to expedited processes) to be applied in following such procedures;
- ○ (6) maintain records of all amounts collected and disbursed under programs established pursuant to the provisions of this part and of the costs incurred in collecting such amounts;
- ○ (7) provide technical assistance to the States to help them establish effective systems for collecting child and spousal support and establishing paternity, and specify the minimum requirements of an affidavit to be used for the voluntary acknowledgment of paternity which shall include the Social Security [1] number of each parent and, after consultation with the States, other common elements as determined by such designee;
- ○ (8) receive applications from States for permission to utilize the courts of the United States to enforce court orders for support against noncustodial parents and, upon a finding that (A) another State has not undertaken to enforce the court order of the originating State against the noncustodial parent within a reasonable time, and (B) that utilization of the Federal courts is the only reasonable method of enforcing such order, approve such applications;
- ○ (9) operate the Federal Parent Locator Service established by section 653 of this title;
- ○ (10) not later than three months after the end of each fiscal year, beginning with the year 1977, submit to the Congress a full and complete report on all activities undertaken pursuant to the provisions of this part, which report shall include, but not be limited to, the following:
  - ■ (A) total program costs and collections set forth in

Case 1:00-cv-12557-NG    Document 1    Filed 12/15/00    Page 35 of 42

sufficient detail to show the cost to the States and the
Federal Government, the distribution of collections to
families, State and local governmental units, and the Federal
Government; and an identification of the financial impact of
the provisions of this part, including -

- (i) the total amount of child support payments collected as
a result of services furnished during the fiscal year to
individuals receiving services under this part;
- (ii) the cost to the States and to the Federal Government
of so furnishing the services; and
  (iii) the number of cases involving families -
- (I) who became ineligible for assistance under State
programs funded under part A of this subchapter during a
month in the fiscal year; and
  (II) with respect to whom a child support payment was
received in the month;
- (B) costs and staff associated with the Office of Child
Support Enforcement;
- (C) the following data, separately stated for cases where the
child is receiving assistance under a State program funded
under part A of this subchapter (or foster care maintenance
payments under part E of this subchapter), or formerly received
such assistance or payments and the State is continuing to
collect support assigned to it pursuant to section 608(a)(3) of
this title or under section 671(a)(17) or 1396k of this title,
and for all other cases under this part:
  - (i) the total number of cases in which a support obligation
  has been established in the fiscal year for which the report
  is submitted;
  - (ii) the total number of cases in which a support
  obligation has been established;
  - (iii) the number of cases in which support was collected
  during the fiscal year;
  - (iv) the total amount of support collected during such
  fiscal year and distributed as current support;
  - (v) the total amount of support collected during such
  fiscal year and distributed as arrearages;
  - (vi) the total amount of support due and unpaid for all
  fiscal years; and
    (vii) the number of child support cases filed in each State
    in such fiscal year, and the amount of the collections made
    in each State in such fiscal year, on behalf of children
    residing in another State or against parents residing in
    another State;
- (D) the status of all State plans under this part as of the
end of the fiscal year last ending before the report is
submitted, together with an explanation of any problems which
are delaying or preventing approval of State plans under this
part;

Case 1:00-cv-12557-NG   Document 1   Filed 12/15/00   Page 36 of 42

■ (E) data, by State, on the use of the Federal Parent Locator
Service, and the number of locate requests submitted without
the noncustodial parent's social security account number;

■ (F) the number of cases, by State, in which an applicant for
or recipient of assistance under a State program funded under
part A of this subchapter has refused to cooperate in
identifying and locating the noncustodial parent and the number
of cases in which refusal so to cooperate is based on good
cause (as determined by the State);

■ (G) data, by State, on use of the Internal Revenue Service
for collections, the number of court orders on which
collections were made, the number of paternity determinations
made and the number of parents located, in sufficient detail to
show the cost and benefits to the States and to the Federal
Government;

■ (H) the major problems encountered which have delayed or
prevented implementation of the provisions of this part during
the fiscal year last ending prior to the submission of such
report; and
(I) compliance, by State, with the standards established
pursuant to subsections (h) and (i) of this section; and
(11) not later than October 1, 1996, after consulting with the
State directors of programs under this part, promulgate forms to
be used by States in interstate cases for -

■ (A) collection of child support through income withholding;

■ (B) imposition of liens; and
(C) administrative subpoenas.

- (b) Certification of child support obligations to Secretary of the
  Treasury for collection
  The Secretary shall, upon the request of any State having in effect a State plan approved under
  this part, certify to the Secretary of the Treasury for collection pursuant to the provisions of
  section 6305 of the Internal Revenue Code of 1986 the amount of any child support obligation
  (including any support obligation with respect to the parent who is living with the child and
  receiving assistance under the State program funded under part A of this subchapter) which is
  assigned to such State or is undertaken to be collected by such State pursuant to section 654(4) of
  this title. No amount may be certified for collection under this subsection except the amount of
  the delinquency under a court or administrative order for support and upon a showing by the State
  that such State has made diligent and reasonable efforts to collect such amounts utilizing its own
  collection mechanisms, and upon an agreement that the State will reimburse the Secretary of the
  Treasury for any costs involved in making the collection. All reimbursements shall be credited to
  the appropriation accounts which bore all or part of the costs involved in making the collections.
  The Secretary after consultation with the Secretary of the Treasury may, by regulation, establish
  criteria for accepting amounts for collection and for making certification under this subsection
  including imposing such limitations on the frequency of making such certifications under this
  subsection.

- (c) Payment of child support collections to States
  The Secretary of the Treasury shall from time to time pay to each State for distribution in

accordance with the provisions of section 657 of this title the amount of each collection made on behalf of such State pursuant to subsection (b) of this section.

- (d) Child support management information system
    - (1) Except as provided in paragraph (3), the Secretary shall not approve the initial and annually updated advance automated data processing planning document, referred to in section 654(16) of this title, unless he finds that such document, when implemented, will generally carry out the objectives of the management system referred to in such subsection, and such document -
        - (A) provides for the conduct of, and reflects the results of, requirements analysis studies, which include consideration of the program mission, functions, organization, services, constraints, and current support, of, in, or relating to, such system,
        - (B) contains a description of the proposed management system referred to in section 654(16) of this title, including a description of information flows, input data, and output reports and uses,
        - (C) sets forth the security and interface requirements to be employed in such management system,
        - (D) describes the projected resource requirements for staff and other needs, and the resources available or expected to be available to meet such requirements,
        - (E) contains an implementation plan and backup procedures to handle possible failures,
        - (F) contains a summary of proposed improvement of such management system in terms of qualitative and quantitative benefits, and
        (G) provides such other information as the Secretary determines under regulation is necessary.
    - (2)
        - (A) The Secretary shall through the separate organizational unit established pursuant to subsection (a) of this section, on a continuing basis, review, assess, and inspect the planning, design, and operation of, management information systems referred to in section 654(16) of this title, with a view to determining whether, and to what extent, such systems meet and continue to meet requirements imposed under paragraph (1) and the conditions specified under section 654(16) of this title.
        - (B) If the Secretary finds with respect to any statewide management information system referred to in section 654(16) of this title that there is a failure substantially to comply with criteria, requirements, and other undertakings, prescribed by the advance automated data processing planning document theretofore approved by the Secretary with respect to such system, then the Secretary shall suspend his approval of such document until there is no longer any such failure of such system to comply with such criteria, requirements, and other undertakings so prescribed.
    - (3) The Secretary may waive any requirement of paragraph (1) or any condition specified under section 654(16) of this title, and shall waive the single statewide system requirement under sections 654(16) and 654a of this title, with respect to a State if -
        - (A) the State demonstrates to the satisfaction of the Secretary that the State has or can develop an alternative system or systems that enable the State -

- (i) for purposes of section 609(a)(8) of this title, to achieve the paternity establishment percentages (as defined in subsection (g)(2) of this section) and other performance measures that may be established by the Secretary;
- (ii) to submit data under section 654(15)(B) of this title that is complete and reliable;
- (iii) to substantially comply with the requirements of this part; and

  (iv) in the case of a request to waive the single statewide system requirement, to -

- (I) meet all functional requirements of sections 654(16) and 654a of this title;
- (II) ensure that calculation of distributions meets the requirements of section 657 of this title and accounts for distributions to children in different families or in different States or sub-State jurisdictions, and for distributions to other States;
- (III) ensure that there is only one point of contact in the State which provides seamless case processing for all interstate case processing and coordinated, automated intrastate case management;
- (IV) ensure that standardized data elements, forms, and definitions are used throughout the State;
- (V) complete the alternative system in no more time than it would take to complete a single statewide system that meets such requirement; and

  (VI) process child support cases as quickly, efficiently, and effectively as such cases would be processed through a single statewide system that meets such requirement;

- (B)
  - (i) the waiver meets the criteria of paragraphs (1), (2), and (3) of section 1315(c) of this title; or
  - (ii) the State provides assurances to the Secretary that steps will be taken to otherwise improve the State's child support enforcement program; and

    (C) in the case of a request to waive the single statewide system requirement, the State has submitted to the Secretary separate estimates of the total cost of a single statewide system that meets such requirement, and of any such alternative system or systems, which shall include estimates of the cost of developing and completing the system and of operating and maintaining the system for 5 years, and the Secretary has agreed with the estimates.

- (e) Technical assistance to States

  The Secretary shall provide such technical assistance to States as he determines necessary to assist States to plan, design, develop, or install and provide for the security of, the management information systems referred to in section 654(16) of this title.

- **(f) Regulations**

  The Secretary shall issue regulations to require that State agencies administering the child support enforcement program under this part petition for the inclusion of medical support as part of any child support order whenever health care coverage is available to the noncustodial parent at a reasonable cost. Such regulation shall also provide for improved information exchange between such State agencies and the State agencies administering the State medicaid programs under subchapter XIX of this chapter with respect to the availability of health insurance coverage.

- **(g) Performance standards for State paternity establishment programs**
    - (1) A State's program under this part shall be found, for purposes of section 609(a)(8) of this title, not to have complied substantially with the requirements of this part unless, for any fiscal year beginning on or after October 1, 1994, its paternity establishment percentage for such fiscal year is based on reliable data and (rounded to the nearest whole percentage point) equals or exceeds -
        - (A) 90 percent;
        - (B) for a State with a paternity establishment percentage of not less than 75 percent but less than 90 percent for such fiscal year, the paternity establishment percentage of the State for the immediately preceding fiscal year plus 2 percentage points;
        - (C) for a State with a paternity establishment percentage of not less than 50 percent but less than 75 percent for such fiscal year, the paternity establishment percentage of the State for the immediately preceding fiscal year plus 3 percentage points;
        - (D) for a State with a paternity establishment percentage of not less than 45 percent but less than 50 percent for such fiscal year, the paternity establishment percentage of the State for the immediately preceding fiscal year plus 4 percentage points;
        - (E) for a State with a paternity establishment percentage of not less than 40 percent but less than 45 percent for such fiscal year, the paternity establishment percentage of the State for the immediately preceding fiscal year plus 5 percentage points; or
        - (F) for a State with a paternity establishment percentage of less than 40 percent for such fiscal year, the paternity establishment percentage of the State for the immediately preceding fiscal year plus 6 percentage points. In determining compliance under this section, a State may use as its paternity establishment percentage either the State's IV-D paternity establishment percentage (as defined in paragraph (2)(A)) or the State's statewide paternity establishment percentage (as defined in paragraph (2)(B)).
    - (2) For purposes of this section -
        - (A) the term "IV-D paternity establishment percentage" means, with respect to a State for a fiscal year, the ratio (expressed as a percentage) that the total number of children -
            - (i) who have been born out of wedlock,
            - (ii)
                - (I) except as provided in the last sentence of this paragraph, with respect to whom assistance is being provided under the State program funded under part A of this subchapter in the fiscal year or, at the option of the State, as of the

end of such year, or (II) with respect to whom services are being provided under the State's plan approved under this part in the fiscal year or, at the option of the State, as of the end of such year pursuant to an application submitted under section 654(4)(A)(ii) of this title, and
(iii) the paternity of whom has been established or acknowledged,
bears to the total number of children born out of wedlock and (except as provided in such last sentence) with respect to whom assistance was being provided under the State program funded under part A of this subchapter as of the end of the preceding fiscal year or with respect to whom services were being provided under the State's plan approved under this part as of the end of the preceding fiscal year pursuant to an application submitted under section 654(4)(A)(ii) of this title;

- ■ (B) the term "statewide paternity establishment percentage" means, with respect to a State for a fiscal year, the ratio (expressed as a percentage) that the total number of minor children -
- ■ (i) who have been born out of wedlock, and
(ii) the paternity of whom has been established or acknowledged during the fiscal year,
bears to the total number of children born out of wedlock during the preceding fiscal year; and
(C) the term "reliable data" means the most recent data available which are found by the Secretary to be reliable for purposes of this section. For purposes of subparagraphs (A) and (B), the total number of children shall not include any child with respect to whom assistance is being provided under the State program funded under part A of this subchapter by reason of the death of a parent unless paternity is established for such child or any child with respect to whom an applicant or recipient is found by the State to qualify for a good cause or other exception to cooperation pursuant to section 654(29) of this title.

- ○ (3)
  - ■ (A) The Secretary may modify the requirements of this subsection to take into account such additional variables as the Secretary identifies (including the percentage of children in a State who are born out of wedlock or for whom support has not been established) that affect the ability of a State to meet the requirements of this subsection.
  - ■ (B) The Secretary shall submit an annual report to the Congress that sets forth the data upon which the paternity establishment percentages for States for a fiscal year are based, lists any additional variables the Secretary has identified under subparagraph (A), and describes State performance in establishing paternity.

- • (h) Prompt State response to requests for child support assistance
The standards required by subsection (a)(1) of this section shall include standards establishing time limits governing the period or periods within which a State must accept and respond to requests (from States, jurisdictions thereof, or individuals who apply for services furnished by the State agency under this part or with respect to whom an assignment pursuant to section 608(a)(3)

Case 1:00-cv-12307-NG   Document 1   Filed 12/15/00   Page 41 of 42

of this title is in effect) for assistance in establishing and enforcing support orders, including requests to locate noncustodial parents, establish paternity, and initiate proceedings to establish and collect child support awards.

- (i) Prompt State distribution of amounts collected as child support
  The standards required by subsection (a)(1) of this section shall include standards establishing time limits governing the period or periods within which a State must distribute, in accordance with section 657 of this title, amounts collected as child support pursuant to the State's plan approved under this part.
  - ○ (j) Training of Federal and State staff, research and demonstration programs, and special projects of regional or national significance
    Out of any money in the Treasury of the United States not otherwise appropriated, there is hereby appropriated to the Secretary for each fiscal year an amount equal to 1 percent of the total amount paid to the Federal Government pursuant to a plan approved under this part during the immediately preceding fiscal year (as determined on the basis of the most recent reliable data available to the Secretary as of the end of the third calendar quarter following the end of such preceding fiscal year), which shall be available for use by the Secretary, either directly or through grants, contracts, or interagency agreements, for -
    - ■ (1) information dissemination and technical assistance to States, training of State and Federal staff, staffing studies, and related activities needed to improve programs under this part (including technical assistance concerning State automated systems required by this part); and
      (2) research, demonstration, and special projects of regional or national significance relating to the operation of State programs under this part. The amount appropriated under this subsection shall remain available until expended.
  - ○ (k) Denial of passports for nonpayment of child support
    - ■ (1) If the Secretary receives a certification by a State agency in accordance with the requirements of section 654(31) of this title that an individual owes arrearages of child support in an amount exceeding $5,000, the Secretary shall transmit such certification to the Secretary of State for action (with respect to denial, revocation, or limitation of passports) pursuant to paragraph (2).
    - ■ (2) The Secretary of State shall, upon certification by the Secretary transmitted under paragraph (1), refuse to issue a passport to such individual, and may revoke, restrict, or limit a passport issued previously to such individual.
    - ■ (3) The Secretary and the Secretary of State shall not be liable to an individual for any action with respect to a certification by a State agency under this section.
  - ○ (l) Facilitation of agreements between State agencies and financial institutions
    The Secretary, through the Federal Parent Locator Service, may aid State agencies providing services under State programs operated pursuant to this part and financial institutions doing business in two or more States in reaching agreements regarding the receipt from such institutions, and the transfer to the State agencies, of information that may be provided pursuant to section 666(a)(17)(A)(i) of this title, except that any State that, as of July 16, 1998, is conducting data matches pursuant to section 666(a)(17)(A)(i) of this title shall have until January 1, 2000, to allow the Secretary to obtain such information from such institutions that are operating in the State. For purposes of section 3413(d) of title 12, a

disclosure pursuant to this subsection shall be considered a disclosure pursuant to a Federal statute.

## Footnotes

[1] So in original. Probably should not be capitalized.

*/Updates | Parallel authorities: CFR |*
*Topical references Notes/*

Search Title 42

© copyright                    about us                    send email